Good afternoon, Illinois Public Court First District Court is now in session. The First Division, the Honorable Justice Michael B Hyman presiding case number 21 dash 0830 Kashmiri Kashari as Norwood versus Sharida more. Good afternoon. My name is Michael Hyman. With me is Justice Carly Walker and justice Mary Ellen cargo. I apologize for a slight delay. I'm having trouble getting my background, as you can see. But we'll be able to continue without. So each side has 20 minutes. This is often you get time for rebuttal, reserve whatever time you wish. And so, each of you please introduce yourself and this result will tell me how much time you want to read about. Good afternoon, Your Honors. My name is Matt Saltzman sal TZ ma n. I represent the plaintiff appellant Kashari Norwood. I think I'd probably want to have 10 minutes. I don't even know if I'll take that long initially and reserve some time for rebuttal, Your Honors. Thank you. Actually, my name is Eleanor work, or represent the defendant, three to more. Thank you. We will conduct ourselves as if we were in the courtroom. We will ask questions if you would just stop. Finish your statement, and then move on to our question we would appreciate any questions before we proceed. Hearing them. Thank you, Your Honor.  Thank you, Judge. Ladies and gentlemen, Your Honors. Again, my name is Matt Saltzman I represent the plaintiff appellant Kashari Norwood, a minor who was injured in an incident involving a broken candle that caused severe burns to her on her body. We believe that the court, the trial court erred in applying traditional open and obvious law as an absolute bar, just because this case involved fire, we think that was incorrect. According to the restatement of torts, the 343 a, and some of the cases we cited including the word case obsessor of land owes a duty the plaintiff of reasonable care. When the harm is foreseeable and undiscoverable by the plaintiff, they have a duty to warn and of course anticipate that danger and protect against it. 343 a also notes that a possessor of land is not liable for open and obvious conditions, unless they should anticipate the harm despite its quote obviousness. Here we believe based upon the facts which are significant and distinguishable from some of the cases that were cited by defendants. That should be the case here the dangerous condition and it's important to know what specifically it is being alleged by the plaintiff is in fact the broken and defective candle that ultimately was the cause of the plaintiff's injuries. We believe that that defective condition, which was the broken and dangerous condition of the candle itself is not open. It's cannot be open and obvious as a matter of course, I have a question about that. Yes. And my review of the record, you know, I read the depositions and clearly the parties. You know, the mom and the daughter were asked about this candle and, you know, they both test or the mother testified to the fact that, you know, in her opinion, it was defective. There was an objection. And what I want to know is, since it doesn't appear to me that there's any expert testimony anywhere was that ever ruled on by the trial court that that evidence was admissible because it seems to me that there wasn't a proper foundation laid for the opinion that it was defective. Well, I think that in response to your question judge, you know, the lay opinion as to whether or not a candle based upon the of what the plaintiff and defendant actually saw is something she can testify to as to whether or not this candle appeared to contain the flame as it did previously. It's something that she is a lay person did see and observe before this incident took place and something that we don't believe required expert testimony to be able to testify to. However, let me ask it this way. Other than what's testified to in the depositions was that particular issue ever brought to the court's attention or ruled on in any way as to whether or not that type of evidence was admissible. It was brought up by the defendant during the initial argument. However, it's not something that there was a direct ruling against. This is something where the case was at such an early stage of F1 discovery that we had not yet had been afforded an opportunity to have an expert testify to that. But again, our position remains the same that we understand that. But right now we've got deposition testimony objections and nothing else after that. That is true judge. That's where we are in the case. Correctly. That's what I thought. I just want to make sure I wasn't missing anything. No, you're correct. Your honor. Again, going forward judge what we'd said was that the broken candle and the defective nature itself of the candle and the lack of the fire containment principles that we believe has been testified to by the defendant who observed that candle before this incident took place had broken it herself and testified that all the wax was exposed and that the part of the candle that was that was made to contain the flame itself was missing. We believe that that hidden and latent defect of the candle that the plaintiff was a minor was not aware of, of course, was not aware of the candle or the condition of the candle itself. Can you describe what the candle looked like in its broken condition? Yeah, based upon the testimony. I don't want to talk about the size and so forth. Sure, it's a standard glade candle one that you would see in a Walmart store, for instance, which is where it was purchased in this case, it's a round cylindrical candle that would come up and have a top or a lip of the candle, so to speak, that would expose. I'm sorry, that would go beyond the wax and the flame wick. So it would actually come up over the flame itself, which is what we believe would have prevented someone from simply coming into count into contact with the flame itself. How would that stop someone from coming into contact if they're leaning over it? Well, I don't think the testimony was that she was leaning over it. I think the testimony was that she had come up to the dresser where it was placed by the defendant. And when she approached it, given the fact that she had a large T-shirt on from being in bed just previously, the minor came into contact with, from the side of the candle, the flame, which was exposed because the actual fire containment part of the candle that goes around above the wax part of the candle was missing. Didn't she testify, though, that she leaned over the dresser to get close to the mirror to take out her earrings? She had come up to the dresser, that's true. She didn't lean over the candle, though. The candle was placed by the defendant extremely close to the end of the dresser. And when she approached the dresser, in order to be able to lean over the dresser itself, not the candle, her T-shirt, which was oversized, came into contact with the flame and immediately went up in flames and caused extensive burns across her body rather rapidly, which is significant in this case as well. We believe that it is this exact case. So just tell us, Mr. Sussman, how was the candle behaving differently from the way it would have otherwise behaved? With respect to this candle in particular, the candle's glass that goes around the candle's flame and wick is always protected from the sides of the candle. There will always be glass that extends up and beyond the wax layer of the candle and then protects against someone from encountering the flame from the side, which is what happened here. This is different than someone who was to lean over the candle or touch on top of the candle. Rather, somebody should be able to anticipate that simply approaching a candle from the side would not be able to catch fire because of the fact that there is this containment principle of the candle in and of the glass that goes around and protects from the actual flame itself. And so it was behaving differently because it was a broken candle. We believe that the candle itself was behaving differently than anticipated or expected. And to be clear, we don't believe that the plaintiff saw this candle in and of itself either way. Well, that's a different point whether or not she saw the candle. I'm getting to the point that it was behaving differently because it was broken. Because it seems that the defendant placed a broken candle on the dresser while she was sleeping, a candle which she did not see when she awakened, she did not see when she left the room, returned to the room, did not see it at that point either. Is that all correct? That is correct. And we agree that, you know, the candle was different in terms of the way that it was anticipated or expected to behave in the fact that there isn't this glass protecting from the side of the candle, which would allow somebody in this instance to simply approach the candle and be at risk to catch fire on something like her clothing that she otherwise would not be had the candle had that containment principle around the flame and the wick of the candle. You don't dispute that there's lots of candles that don't have any kind of container that people light all the time and all sorts of places, do you? It's true. There are other candles. There's candles like a tea candle, for instance, that are small that don't have glass up around the side. However, this candle, this glade wick candle is a larger candle that has a larger wick and flame. How large is it in dimension? There's no testimony in terms of the exact height. And unfortunately, the candle was discarded by the defendant. So it was not preserved for us to be able to use it as evidence. However, based upon the testimony and the standard type of candle that it was, it would be something around four to five inches high, which would have the glass that would go extend further beyond that to cover where the flame and the wick would be. And then it would allow for one of those little caps, so to speak, to go on the top and cover the top of the candle. So you can imagine how the actual fire containment portion of the glass would encompass the entire flame and wick. And then similarly allow for there to be a cover or a top to the candle, so to speak. So again, much different than a smaller flame or wick that would be associated with something like a tea candle, which was cited in some of the cases by the defendant, for instance, given the fact that this is a larger candle with a larger wick and flame and something that is not anticipated to be a danger from approaching it simply from the side as it was. Okay, so let me ask you this. If the evidence is that she leaned over it, would that everything you've just said be true or does your theory hinge on the fact that she approached it from the side? It's a good question. I don't think that that would change anything, given the fact that, you know, this glass would also contain it all the way around and up as well. Simply leaning over the candle in that case would require her to actually get her shirt into the candle area where the exposed wick and flame would be. In this case, by not having that from it breaking when it fell and the defendant knowing that this candle not only had broken glass around the top, but also down below the wax level of the candle, it inherently changed the principles of this candle, which was created with this type of glass for its protection purpose. And again, I'm given a real problem understanding why these theories would not require expert testimony. Well, I think in terms of the way that the candle was observed and the way that it looked, and in terms of whether a layperson can testify to if, in their opinion, they believe that a candle would or would not have the same containment principles, simply from looking at it would be something that a layperson could testify to. We do believe that if afforded the opportunity to get past this motion for summary judgment, our experts would testify to the exact same thing. However, I don't think that expert testimony is necessary in a case like this, where someone that is a layperson can simply observe and make general conclusions about the ability of a candle to be able to act the way that it was when that person purchased the candle with those containment principles for the same purpose. So I do think that it's something that a layperson could testify to based upon their observations and based upon their experience and knowledge of how candles behave and the purpose for glass surrounding a candle like in this case. And similarly, that's the reason why this type of candle was purchased by the defendant is because of the fact that it is a candle that had containment principles to it. It was a larger candle that was supposed to make the entire room smell good. This was not just a tea candle with a purpose of providing a little bit of light. And so for that reason, I believe that the layperson in this case, the defendant does have the knowledge and experience in dealing with these candles to be able to testify to whether or not she believes that the type of break that she observed and she only is the she is the only one that observed that type of damage and defectiveness to the candle. I think that if, first of all, her herself testifying to her testimony that she had never had a candle like this before, other than on the date in question, she had testified that she was familiar with, of course, with candles and the way that they worked. She had testified that she had encountered candles like this. However, this was never had this particular type of candle before she just didn't purchase this type of candle for her home. This was the first time she had purchased this type of candle for her home, which is what she had testified to. Are you telling me that she testified that she had experience with this type of candle that there's evidence of that in the record? I think she testified and there's evidence in the record that she was familiar with the way that the candle was supposed to behave. And then it was something where this particular candle was only first purchased in the home. And, you know, obviously, her being able to be familiar with the properties of a candle and the way that glass would protect one from encountering it was something that she was familiar with, and something that she would be able to be to testify to and provide opinions about. So your claim is that she was more was negligent in not warning Norwood that the candle was broken and it was there. I think that that is a large element of it. I think the fact that she was aware of this latent defect on the candle that the plaintiff, the minor, was not aware of. She owed a duty to the plaintiff. And I want to get into that duty analysis just a little bit as I did in my brief, but she owed a duty to the plaintiff to protect against what we believe was the actual danger involved in this case, not the fire itself, but the lack of that fire containment principle that allowed the plaintiff to become susceptible to becoming burned or encountering the candle flame. Let's just say that if this case, the glass enclosure was intact, it had never broken. So we had the regular, then, and it burned, we'd have a very different case in your claim.  That is night and day, because your claim is the fact that it was broken. That fact takes it outside of open and obvious in this situation. In fact, nobody testified. It was agreed by the defendants, and Norwood testified she never saw it. Correct. No question about that. And there were things on the dressing. But she had no idea that there was a candle there. And I remember there before. Right. I think Your Honor just touched upon the second element of our allegations, which is not just the fact that the candle was broken, but I think the placement is very significant in this case as well. We think there was negligence, not only in actually using a candle that the defendant alone knew lacked its fire containment principles and was broken and defective. But the second element of that and the second allegation that the plaintiff makes is that the placement in and of itself, near the edge of the counter without warning the plaintiff, having known that she had placed it there and in this negligent fashion, was another element of what caused this injury. I think both of those things in conjunction with each other are the negligence, so to speak, that ultimately caused the injuries to the plaintiff. The fact that fire was what was involved is simply secondary to the fact that she had used something that was dangerous and had a latent defect that only the defendant knew about, that she put the plaintiff in a position to become harm that she otherwise would not have been in had the defendant not used this candle that was defective and placed it in the location that she did and further directed the minor plaintiff to that counter in order to be able to go and take her earrings out. So we have a number of different elements in the chain of causation here that suggests that the defendant who was the only one who knew about the condition, the location, the placement, and ultimately the direction of the minor to this candle went ahead and directed this young lady to this danger that she knew of that we don't believe was open and obvious as a matter of law and should not be an absolute bar. And by doing so, the plaintiff encountered the dangerous condition, which was the candle in and of itself, which caused her to become burned by that exposed flame and way. So what you're saying is there's a question. This is something to us on some region. Correct. So there's a question of fact with regard to the open and obvious issue. That is exactly what the plaintiff is arguing that this is an this is an argument that should ultimately be decided by a jury, and that there should not be an absolute bar as a matter of law, based upon an open and obvious theory that simply it involved fire, which the state of Illinois. Yeah, but I mean, that's how and that's how you distinguish it from the two main cases that the defendant relies on. Right. I think there's more to distinguish it from those cases as well. In those cases, we have a four year old that deliberately climbed a counter and encountered a candle that she had seen previously. And we have another one in which a 12 year old child stomped out a flame that he was familiar with being there, causing flames, you know, burns, of course, or injuries from the fire. It's completely different than someone who literally. The cases are extremely different. They're distinguishable. And when you boil it down, what we have here that we don't have any other cases and what you're saying is there's a latent defect, which raised the duty on more. Because, I mean, if it hadn't been effective, we probably wouldn't be here this afternoon. I think that's the case, but I also think the placement of the candle is something to consider. I think 343 a really speaks to this exact situation when it says that unless the defendant in this case should anticipate the harm despite its quote unquote obviousness. In this case, argued by the defendant to be the flame. And in our case, saying that is the defective nature of the candle. We think that it imposes a duty on the defendant and it should impose a duty on the defendant, they should not be able to be absolved of liability 100%. Because of the fact that the plaintiff was burned by fire. When this type of set of distinguishable facts is presented in front of the court. Obviously, we think should be presented before a jury. We think that a jury would be able to determine that in this case, there are facts that distinguish it from open and obvious law. And because of that, the jury would be able to determine that it was these actions of the defendant that were negligence and impose the duty on the defendant to the plaintiff. The minor child in this case, and could have ultimately prevented this injury, or could have at the very least impose the duty on the defendant to warn the plaintiff when she directed the plaintiff to this defective condition candle that there was something there, and that otherwise was in a dangerous condition. I think that that is a position I want you to be able to finish your thought here but but I have to go back a second. You implied earlier that discovery was not complete. I think you were answering just as Congress question when you said that you had only done the one. So in this motion was brought prior to the completion of discovery. Well, what I would tell you is that F ones were in fact completed at this point there was no one else to take other than the mother and the, and the child, but we had not gotten to expert f3 discovery yet when this motion was filed, and ultimately a briefing schedule was entered on the motion. F2 discovery was not completed, either, even though that's neither here nor there with respect to the arguments presented before the cart to the court today. But yes, that's correct. We do believe and we did say during the oral arguments, initially on the underlying trial courts decision on this case that we do believe that if there is a question as to whether or not. First of all, we think the layperson can testify to this but whether or not the candles defective nature would make somebody more susceptible becoming burn that an expert, our expert would testify that that is the case. But again, I don't want to get away from the fact that I do believe that expert testimony is not necessary for the defendant to be able to based upon her knowledge and experience testifies a layperson as to whether or not this candle that she knows how it's supposed to behave and saw it behave properly before this incident took place when she had lit it in the past before it broke. I believe that a layperson like the defendant is more should and could be able to testify as to whether or not she believes, and she did believe that this gentleman, we understand that your position. But I think what Justice Walker is getting at and my question is, did anyone bring it to the attention to have the court. Oh, judge this motion is premature. We want to do expert testimony discovery, we want to declare an expert that hasn't been done yet. Can you delay this until such time as we are have been provided an opportunity to do that did anyone object did anyone bring that to the court's attention or did everybody just file their briefs and argue. I don't believe that it was something where the court overruled our ability to obtain an expert. So no question did anyone object that this was premature for any reason plaintiff did not object that the motion was premature. And we did believe that obviously if we got past that there would be expert discovery in this case, but no judge directly responding to your question. We believe that as a lay person the defendant could testify to this and it did not require expert testimony, despite the fact that might have been helpful if this matter was able to continue and get to trial, but no we did not request that because we do believe strongly that the defendant is able to testify, and did testify to that exact question judge. Thank you. Thank you. There aren't any more questions this time. You still have your time for rebuttal. Understood. Thank you, Your Honor. Mr. Yeah, you. Sorry, I want to talk about this issue with broken glass, and the issue of experts. Never asked for delay in this in order to obtain experts. And once summary judgment was filed plaintiff has a burden of showing some evidence to counter summary judgment. He could have asked the court is often done. Let me get an expert, I think an expert never did that. And again, it's plaintiff's burden once summary judgment is filed opposing parties burden to provide some evidence to support their case plaintiff simply has not done that here. In regard to this issue with the broken glass plaintiff fails to provide any explanation as to how the broken glass and closure affected the central question. Was a canvas flame open now these dangers for which Rita more or duty to protect or warn candles first of all are not required to have an outer covering that was made clear in the sample but but that's not the question here, because this candle was this with with the mother. And the question is the duty of the mother not the manufacturer the manufacturer, if they didn't have that enclosure might have been liable, considering the, the height of the wax the length of the tip, and other factors. So, but we have to look at it in the situation we have and that is that under these facts with a. You agree that there was no glass around the. There was some glass, there was some glass, there wasn't entirely glass free, there was a crack, a little break in the glass, there was a little crack in the glass, I reading the briefs I didn't get the idea that the brief, it was just that it was there with a crack, is that, is that what you're saying. Some was missing some of the glasses missing that's undisputed that's undisputed. Well, that's what I just asked you. Okay. So what's glass around. Some glass was missing. That's, that's, that's, that goes to this question. So, there is a question of fact here is what Mr saltzman say there's a question of fact because the candle was not in the condition that should have been in. And the duty with regards to that in the question. He's not saying and you, you agree, I assume that Nord is conceded that she knows what the candle is and the danger of a candle. That's not the issue is. That's part of the issue yes but I want to see that issue. It's not that is if that's the issue. In regards to open and obvious I guess I'm confused about your question your honor because yes the question is open and obvious. Right. But it's not done by the fact that the fact that it is a candle. That's not the end of the question. Correct, correct to candle. So, right it's a candle, and it was in broken condition. Is that correct. The candle was the outer of the outer quarter he was in broken condition. That's correct. Okay. So that whether that made it an open and obvious under the circumstances of this case, raises it, what he's saying is raises an issue of fact, because she said she didn't see it, her mother placed it there. Her mother didn't warn her about it. There had never been a candle there before. So, the cases you say, as Mr Sultzman indicated, seem to be where young people should have realized the danger of a candle, or the light the flames, and, and they did something active to come in communication with those flames that didn't happen. She was not, she didn't even know the flame was there, but you've conceded. I can see that, but again, can I deal with first with a broken enclosure issue first before I get into the book. Okay, so there's no evidence here, we acknowledge the glass was broken on the candle, that's acknowledged, that's not in dispute. But there's no evidence in the record at all. As to how that missing piece of clear glass made that burning candle less visible for one, or dangerous because of that, it's a condition, it's not a cause. It's a condition had plates been walking by. Let me just stop you there you said it's a condition not a cause. And what about what basis are you saying. That's your argument. That's the evidence, there's no evidence your honor that the candle behaved any differently than a candle would have because that broken glass no evidence plaintiff was injured when she leaned over the candle. If she had walked by, I would admit, if she had walked by that candle and flames are coming out a different way from that candle that candles acting like a candle should. There was no evidence that the broken container added any effect on that candle at all. It's speculation to say, well it was broken. Therefore, it was somehow more dangerous than a regular candle. That is pure speculation. Again plaintiff an opportunity to have some evidence set forth he never did. She never did have evidence set forth as how this candle was somehow dangerous because the outer container was broken. There's not dispute it was broken. This situation is there's no evidence supporting that this candle acted, other than a candle should plaintiff was not injured again when she walked by. And the candle acted differently. She leaned over and the evidence does support on page 534 of the record. Plaintiff testified. She was injured the candle encountered her. When she physically leaned over the candle. That's when she was injured. There is no evidence to support this broken container, which we acknowledge is there said it made this candle act differently and that is that is a difference here. And that's what makes us not different from other cases, frankly, because this broken container had no effect there's no evidence of that that plaintiff again has the burden of setting forth some evidence to counteract summary judgment. Some of us doesn't prove his case, but has set forth some evidence that's handled, because it for container was dangerous. In fact, it was a flame. There is no evidence to support that. There's no evidence that this flame was uncontained in any way. Simply by plaintiff arguing that does not make that a fact. What about what about the fact that the candle. That the daughter didn't know the candle was there and the mom didn't tell the daughter about the candle and the mom didn't tell the daughter that she lit the candle when she was sleeping the next morning. Well, that brings you into I believe your honor, the open and obvious situation. And you have a flame you have fire, which Illinois, clearly acknowledges is an open obvious danger. And the question then becomes, should a reasonable person of similar age, using your ordinary perception intelligence judgment she's 13 years old, have recognized the open and obvious danger of the fire for Bernie candle presents. No, no. Stop right there. Stop right there. She's already conceded she knows you even said it's conceded she knows a candle presents an open and obvious condition. Okay, you that's so you use that as a, as, as the key question. You can't have it that way. You that's circular. Okay, that doesn't help us at all. So that can't be that tell me what you think the issue is that because you can't make that the issue. She's conceded it, and that's not the answer to the question. She's conceded that she saw it what she's arguing. She did not see it. She's no she didn't see it but she is not alleging or arguing that fire is not open on condition what plaintiff is focusing on here is the fact that this can this container of the candles that he was broken. That's what I'm focusing on. There was a flame in this candle, and see the candle or broken or anything she didn't see it so now the question is, I think the question that you would be asking is whether the it's not whether the injured, whether she saw the danger but whether it was, in fact, visible. The question for a jury to decide is was the candle visible wasn't visible we don't know that right now that's a question of fact. And I would argue your honor, the law clearly says that the underlying facts regarding the condition or undisputed, it becomes a question of law. There is no question here, the candle was in the container was in no question. It was located in the center of a small dresser. We don't blame. Let me, let me finish with Mr Saltzman said, this is a large candle. It was a lit candle. It was in the room. It was not groggy or sleepy she went up for about an hour I believe she could look down and see that candle. And she had an ordinary perception. That's not the law either as you know, we don't look at what she, we look at what a reasonable person, 13 year old girl in her situation. And that's what we can answer, whether they would see a visible not to me, why that is an issue of fact, whether that was visible, because we know it was, she didn't see it that that that's for sure. So this situation is different than the cases you say you don't say to any cases like this case, because in the two cases that you rely on, they both saw the flames, they absolutely saw the flame what they were drawn towards the flames. In this case, there's is an issue of visibility. And that is goes to the essence of what this claim is where, where would, what's your response to that. There is not a question of visibility, but this is viewed objectively. And with the facts again are understood, this is a candle, as plaintiff counsel just stated a large candle on a small dresser, a flame. Based on that fact, Illinois law clearly holds you can look at that fact, undisputed that 13 year old should recognize that. No, no. We've already conceded, they can see that she that's not she knows what a flame is okay, it's not like you're trying to put it back in this box. It's not in that box, it's in this situation. We know she didn't see the candle, and we know there are personal items there. And we know her mother put on a candle that had broken glass, and it was in some kind of, it was not in the condition it should have been in. Okay. And we know her mother didn't warn her. So there are a lot of questions of fact, with regard to whether it's open and obvious and you keep going back to the fact that she's a child and she should recognize fire. That's not the point. Let me ask you one thing regarding that open and obvious, if that's the fact, and the law says you see, you know,  She could look down and see that in every case then involving any alleged open obvious, it could be played could argue, well I just didn't see it. And we know for a fact the court looks more than that, because a lot of cases talk about that the plaintiff did not see it. And I will show you to one case, Stevens versus Riley. The second justification 1991 that in that case was 17 month old child out and about old enough to be at large, and drowned in some water, water, not a fire, but didn't see the water but the court said, Yes, didn't see it. But based on perception judgment should have known it was there. That was 17 month old child who didn't see it. In this case, please did not see it. But our argument is, she should have seen it. The facts are disputed the candles right there on the dresser. It's not a question. It's not a question of fact, it's not a question. There are other cases. There are other cases in Illinois. Spring Court, where somebody goes to a swimming hole, adult goes to a swimming hole. Now you would say that it's open and obvious danger because it's water is accurate. But water is typically considered to be an open obvious danger. Okay, dives into the water. And didn't see the or the pipe that was under the water. Now, the court said no, we can't have similar judgment on that. There's a question there. So, it's not considered just because it's open and obvious does not answer the question in this case. And I would disagree that's different situation because you have something under the water that can't be seen. You have in this situation, you have a candle flame on the dresser. We don't know she said she didn't see it. You know, we, I don't we don't know there hasn't there's questions affect how tall she was the placement of the items what the items were how big the items were what she was doing, you know, she came into the room and went to the mirror to take off her earrings. So, you know, all that happened in split seconds. And you, you have you've already answered all the questions. But the question becomes visibility, and that's I'm just asking, you know, to me that would be a question of fact. And again, I think the facts are disputed. First of all, she was tall enough to lean over a dresser and and have a catch a fire. But let me finish my facts, please, Your Honor, that there's no dispute about what the candle was in terms of how there's broken enclosure. That was large candle is just stated. It was on a dresser and a flame fires considered open and I'm a stranger, you can't be a plaintiff and argue with your blinders on, I didn't see it. It's right in front of you. It is an open obvious danger, whether she says you saw it or not. That's what you've already but you've already. No, it's not going to because the. So, that's my point. Apparently there's disagreement. It was broken. You say it was almost all intact with a crack. Then you said there were some pieces missing. We don't know. Apparently, that is still a question of fact, as to what that all was about in the condition. So, you know, you're saying, oh, now it's big because he used the word big. I don't know what the word big means big in terms of a candle can mean a lot of different things. So, when you compare to, you can't say big without comparing it to something. So there's a lot of open questions of fact that you are just raising now. No, no, I'm that's that's actually not true. We don't just keep the cameras broken. What we know, because there's no evidence that that we know that there's no evidence that candle candle. We know there's no allegation, there's no allegation here that either exception. There's no contention that from plaintiff that she was distracted to not see a candle. It was a light on the dresser. The facts in here, the facts are disputed as to the key elements here. There's a broken enclosure, but no evidence of plain behavior differently than a regular candle. No evidence to support that. And she had was a 13 year old with perception, intelligence and judgment. She approached the stressor without allegations of distraction, and did not see it for whatever reason, but you can't walk around with blinders on your plaintiff, you have to exercise judgment as well. That's it, but you can't walk around blinders on say, I didn't see it. That way it's not. Even you could see, she didn't see it. So there is a question here, whether a person in her situation would see under the conditions here, considering it's in broken condition, which apparently hasn't been resolved as to how it was, how it looked. Specifically, because the 2 of you seem to be disagreeing about that. So, in any event, I understand your, your contention. But just briefly runner, the condition has nothing to do with her seeing the candle. There's no, there's no evidence here that broken condition of the container affected that candles flame in any way. And that's really speculative to for plaintiff to argue that and to state that has an effect on this. What we do know is there was a lit candle on the dresser in the center of the dresser in the room. That was visible on the dresser. They both stated it was there. It was not. It's not contended. It wasn't visible. And then you're saying that it was there. It was a flame. And the reason that the court says open and obvious is you can you can see that, you know, fire is visible. This wasn't just this wasn't hidden or obscured. There's no allegation was hidden or obscured. This is a flame. On a table. All right, I don't know there was no allegation was hidden. No, it was allegations that there are personal items on the counter that she put out the night before. And she did she, and we've already gone over five or six times. She did not see it. So there is a question of visibility. That's all I'm saying plaintiff testified she could see everything on that dresser. She didn't see the candle she looked at she but she said that and her to even look at her deposition. She said, the room was lit enough she was visible, she could see on the dresser. That is true. And again, you know, there is plaintiff has a burden also to use do care own safety. You can't hold a property owner for mother homeowner responsible for everything. They're just everything. When, when you put a candle. That's broken in a room where people sleep that you've never done that before. In a position of day, there's a duty there that that that's what they're raising you they're raising a question that's different than the cases you have cited, and I, you know, this is a situation that falls into some, not the exception because they didn't raise those two exceptions, but it is it falls falls into other cases that have been cited in the briefs, and I would, I would just, okay, go ahead, go ahead, I would just say briefly I'm going to run out of time. You know you are you bring up the broken closure again that there was a because there again there's no evidence that this broken enclosure effect that flame. So it's speculation say that so they get back to a flame, a fire, a flame and a fire on a dresser and should a 13 year old have recognized that look down use order for substance see, hey, you know what, there is a handle here. That's lit. I should be careful of that fact. It's like the case of the swimmer who didn't see the pipe. Yeah, because a pipe you can't see underwater. You can't see underwater, but you can see an address or we look down and see underwater and there's many cases where people dive into shallow pools. So, yeah, is the underwater. And it's different. We say it's different but how's it different than here. Well, all you have to do is look down and see that she did look down, but she didn't see it. No, but your honor there's no allegation was obscured and it wasn't obscured. There's no contention it was obscured in any way. It was on the dresser in the center of the dresser all the testimony stated that it was not obscured or hidden anyway. It was simply there on the dresser, played to fail to see it. It goes to go back to open and obvious the facts. The underlying back to this case. I don't want to you but I've been trying to get a question in here. Yes, because you just mentioned you're open and obvious again and as soon as your fire or the flame come up you say that bring us back to open and obvious correct. The candle was an open obvious condition. Yes, the candle was an open. You could have answered it with a yes or no you're saying yes. Correct. But the issue here is not just an open and obvious playing from a candle. The issue is that we're talking about a candle which has clearly been broken, and it's now a defective candle. And I, and what the plaintiff is also arguing that it's a defective clamp camp candle, which was negligently placed. So they're referring, they're saying that the defendant negligently place the camera on the dresser. And by doing so, had a duty to warn that there's a candle on your dress, and that warning never occurred. And that's where their argument is. And I go again, and I'm not trying to be a broken record with this broken enclosure. But I would agree with you, if this candle. If there's evidence this candle acted any differently than a regular candle with a broken enclosure, there's no evidence to support that. So you have a flame. And you can't get a placement until you get past duty and argument, this is open obvious there's no duty here. It was placed in the center of the dresser. It was visible plaintiff said she could see everything on that dresser, she didn't look down and see this but she could have seen this room was light enough. She said to see everything. She didn't see it there. And again, plaintiff also has a duty to use reasonable some judgment and perception, look around at things. And this is an open and exchanger. Because of that. No evidence is an effect of that. Sure, you already answered the question. That's the reason I jumped into. Okay, thank you. Thank you. The defendant testified at her deposition that the candle was behaving differently to the extent that the flame was larger than it normally would be with the broken glass clear glass. Well, I don't, I don't recall her test for that but I would question how she would compare that. And with that worth any evidence regarding that. Well, she says she was familiar with it that she had bought those before but never brought it to her home. Defendant. Yes, defend. Okay. And I would say, if the flame was larger. Wouldn't that be more visible. If that's the case, you give a larger flame, but it'd be more visible. If it was, it was there was acting, it was somehow different. I'm not sure if it had testified that regard but there's two issues here. One is that the candle was behaving differently because it was broken. And of course defendant knew that, but the defendant didn't tell the 13 year old minor plaintiff that it was acting that was behaving differently. And then secondly, it was the placement of the candle on the dresser that actually caused the defendants burn, and the defendant is arguing that the candle was negligently placed on the dresser in such a way that it would cause burns. And again, as I would, as I argue, there's no evidence that this broken container affected that candle in any way in terms of how it burned plaintiff has the burden of setting forth evidence. You agree that I agree that we've already told us about plenty of time. So if you if I'm asking you a question and you're repeating yourself I will cut you off. But otherwise, I'm not sure I guess I'm not sure what your question is then your honor because. Okay, the, the defendant did defendant testified that she had purchased this candle before but never brought it to her home. Okay, call that testimony. I recall that she had not had that candle in her home before and let it. So she, and she also testified she was familiar with the candle to that extent but had never. She also testified that she dropped it maybe there's conflicting testimony but maybe it was in the bathroom that she dropped it. I believe she wasn't sure she what she didn't say she definitely dropped it she didn't know. Okay, and I believe the plaintiff also testified that the defendant told her she dropped it in the bathroom. Is that correct. So so at some point the candle was dropped. Well, we don't know where it was dropped when it was dropped maybe was dropped in the store I don't know, but bottom line is this. I can't you even agree that the candle was broken. Correct. But you agree with whether it was dropped, whether it was thrown against the wall you was broken. So now we include I wish I would clarify the enclosure, not the candle the enclosure. Yeah, the enclosure was broken the enclosure which contains the flame contains a candle. Okay. All right. So the end at that point, the defendant knew that the candle was defective. The defendant did not tell the plaintiff, the minor 13 year old minor playing with the candle was defective. And then it was the place there are the argument from the other side is that it was the placement of the candle on the dresser. That caused the injured negligently placing the candle, where it was placed on the dress dress. Is that a question I'm not going to respond to that. This is what the argument is. Yes, and I believe I've responded you said I repeat myself but I go back to my same argument. We don't dispute that this was broken. There's no disputing that the candle was broken but there's no evidence that that candle acted differently because of that break in the candle. No one testifies. So the defendants testimony at the deposition is not evidence is that what you're implying. But she didn't testify in that regard, she did not testify it acted different, there was no testimony that regard. I would disagree with you on that. There is no testimonies that to that effect that plaintiff leaned over plaintiff leaned over. And that's when her shirt caught on fire she leaned up top the over the candle, how a broken enclosure would affect that. Seeing the candle in there, I don't. I disagree there. Why is it relevant. Why is it what is irrelevant. Why is it relevant. Whether, I mean, to the way you're saying it is it doesn't matter whether it was broken or not. Right, because there was a flame. Is that is that what you're saying. I'm going to fax. In this case, there is no evidence that the candle acted any differently plaintiff Lee and plaintiff leaned over the candle and her shirt. Why did he have to act differently. Because it was, it was a flame. It was a flame. So what. But why does fire is an open. You say we don't know if it acted right. Well there's no evidence it did there's no evidence that by birth. Why is that relevant to the question of visibility. It's relevant because plaintiff is contending that broken container made the candle act differently. That's a key part of the contention by plaintiff that the broken container was the dangerous condition. And there's no evidence that broken container affected how that candle behave. There's no evidence, and again play to pass that furnace any fourth evidence. Well, I don't know. I think you're putting too much testimony is not evidence. Sorry, the plaintiff's testimony is not evidence either. That the candle. I don't think I don't believe plaintiff testified that regard. Okay, I thought you just said plaintiff. No plaintiff did not testify that regard no neither the defendant correct. There is no testimony from anyone that that candle behaved in a way that was somehow dangerous, or something different than a candle would behave. There's a flame to a candle. There's no question. The container was broken there was a flame plaintiff leaned over the flame, and her shirt caught a fire. I don't see how there was also no testimony that that the flame was larger than it. I do not believe so your honor that is not my recollection of the of the testament on looking at my evidence and I don't believe that is. There was testimony where it was located. What the break look like, but there's no testimony that that flame, and that candle acted anything other than a candle would. Because the fact is that this candle was constructed with a glass enclosure is correct. And we know it was broken, and there was testimony that the glass was missing. Went all the way down to where the wax was, so some of the West was exposed. I don't know all the way around or I don't know the two of you seem to disagree and condition, but we don't, there was missing pieces. So the candle could act in the exact same way would have acted in any event, but was important here is like the pipe in the swimming pool in the man made whole waterhole. Is that it's not in a condition that should have been, you know, in the pipe case the pipe pipe had been moved in here. There's the glass enclosure is broken if there had been a glass enclosure is that we talked about this before, we probably wouldn't have a case. It's the fact that without that glass enclosure, things can come in contact with that flame and she knew it was broken. So, that's the negligence. Yes, because I understand their complaint that they will let me run. Well, I don't want to disagree the honor. Yes, I think you're yes I think you're wrong. I do think you're wrong. Because you keep going back to this broken glass in her, she leaned over and her shirt had got gotten on the side of the plane of the candle in a broken area of that and caught a plane. I would agree with you. That didn't happen. Plaintiff leaned over the top of it, and the flame caught her shirt fire. It wasn't that we do with a broken container there's no evidence, and I will record 691 692. There was no testimony by either plaintiff, or her mother Serena more the flame and the candles uncontained, or the flame has escaped from the candles wick, due to the broken container. It's not your, it's coming you're coming back to that, but I would ask you to look at the record see if anyone testified here that that candle actually differently because it was broken container. There's no testimony to that effect, and it was broken, it's undisputed. But you can also have a condition and not have it be a cause. And there's no testimony supported that plaintiff has, you know, doesn't have to prove his case summary judgment, but he has to set forth some evidence in that regard. Otherwise, it's just speculation. And there's no evidence, other than speculation, as to that. Because of that, this was a flame plate was 13 years old, and she had her own responsibility to look at her surroundings. There's no question the law talks about that. It was visible under it was on a small dresser, a flame, flame going on there. She could look down, and she was not hired to get distracted. She wasn't instructed to go to that mirror, she was only tech to hold by defendant figures off. That was it. She didn't see it, but using ordinary perception judgment of a 13 year old. The question under clear going a lot, it should she have seen that and taken notice of that, and not encounter that because she would have seen that. And we argue, yes, she was summary judge was correctly entered here by the circuit court. We asked the summary judgment entry be affirmed for these manner for this. These issues. Thank you. Thank you. Thank you, Your Honor, and I'll try to be brief here but I do want to address a couple of the points before I even get started I want to make sure that we understand. Because there's been a lot of implications as to what the burden is here that the burden on emotion for summary judgment, you know, should be viewed in a light most favorable to the non moving party in this case the petitioner and the plaintiff. All we've heard from the argument from defendant and we continue to hear our arguments about where the plaintiff lean what the enclosure looks like, whether the plaintiff saw this flame, whether it was on the center or the edge of the counter and I think your honors have identified that accurately. These are all questions of fact, all questions of fact that absolutely should go to a jury and should have gone to a jury in this case, and still should go to a jury in this case, as to whether or not the defendant was negligent in these different elements that the plaintiff has pled in their complaint the placement of the candle. The placement of a defective and dangerous candle, and there's been a lot of tests, I'm sorry argument about whether or not there's evidence the plaintiff has to present some evidence of the plaintiff doesn't have to prove their case but they do have to present some evidence and let me say very clearly, based upon my understanding, testimony of the plaintiff and defendant is evidence. And in this case there's a lot of testimony of the plaintiff and defendants in this case that speaks directly to those issues that we believe not only should overcome summary judgment but ultimately should prevail on the case, and I want to direct your honor's attention. Can I ask a question. But there's something that was said by Mr or, you know, I don't know if that's your position. She said that it's your position that the candle should should have was acting differently because of the broken condition. Is that your contention. Absolutely. Absolutely. And let's be clear, open and obvious doesn't speak to whether or not you know there's a candle or it doesn't speak to whether or not the candle is the, it's about five right and the fire is a limited portion of the, of the danger that ultimately caused the plaintiff's injury in this case, with respect to the question of fact and the testimony that's been given citing to the record pages 752 to 755. These exact questions were asked of the defendant, and ultimately were also answered by the plaintiff when she had spoken to the defendant in a party admission after the incident took place. This exact testimony was given that the glass would make the candle dangerous to someone like Kashari who would be standing close to that the glass left the part of the glass that was had the purpose of protecting the flame. Miss Moore said that the candle had all of the wax exposed, as well as the area where the wick and flame was contained. This is direct testimony from the record. And this isn't anything that any you know that that an expert we need to testify to this is lay testimony as to an observation made to the condition of the candle. And again, disputes over these questions continue to support the plaintiff's argument that the court cannot as a matter of law, find that this case should not go to a jury simply because fires involved, making it absolutely open and obvious. These questions impose a duty on the defendants, and the duty that's imposed is because the defendant had actual notice of the dangerous condition that the plaintiff has fled in their complaints and had actual notice of the lack of the fire containment principles and had actual notice of the defective candle, and because the defendant had actual notice, she's in a special position where she has to do things to protect the minor plaintiff from encountering this dangerous condition that ultimately led to some severe and extreme injuries of the plaintiff that she will never recover from the duty is owed because of a number of different things. The duty is owed because the magnitude of the injury to the plaintiff is significant, that the burden placed upon the defendant to simply warn the plaintiff or place it in a different location is so minimal that the court has to take notice of this and impose this duty on the defendant, the landowner or the property owner in this case the person who's placed and create the dangerous condition herself. We also have heard some testimony I'm some argument, and a small note about the distraction is that exception. I know there's been argument that the plaintiff is unable to make this contention because they didn't raise it in their initial brief but it goes in, it's not something where she would have gone in and be expected to notice that there's a candle there. And again, that's not the elements that the court looks at as being open and obvious, it's the fire. And in this case she testified, she did not see it. She did not see the candle she did not see the flame. And there's a reason for that. And she, most importantly, did not see the defective condition that the plaintiff alleges is the cause of this incident. We also need to consider the fact that the plaintiff is a minor in this case, the plaintiff is a young girl, although she does admit that she is familiar with the way that fire behaves she's blown out a birthday candle before and we all know that that's the standard that's raised in the open and obvious cases. In this particular instance, she was not knowledgeable of the defective condition of the candle. She testified that she didn't know was there and that is evidence. And further the defendant herself testified that she did not warn or make the plaintiff aware of the fact that there was a candle that not only was burning, but was also defective and broken and was burning when she directed the plaintiff to encounter it by making her go over to the counter to take out her earrings or put them in whatever it was. But again, this is all evidence. And the last thing I do want to note is that a lot of the cases that were cited in terms of whether or not you know the court aired on allowing some of these allegations to go forward. These cases went to trial. And ultimately we saw post trial motions. This is a motion for summary judgment at the early stages in the case. And in this particular case, it is error by the trial court to not allow this case to go forward by directly asserting that it is an error by the trial court. And that is the reason why the appellate court, in our opinion, needs to take recognition of the fact that this case is distinguishable not only in its facts, but it is distinguishable in the way that the law would apply to this particular condition and situation that the defendant had actual notice of. In this case, we again would respectfully request that the court, the appellate court and your honors, take recognition of these issues and overturn the trial courts ruling and allow the plaintiff to proceed with these questions of fact, before a jury where this case belongs. Thank you, your honors. I want to thank both of you for your briefs and your arguments. We have some tough questions and you both did very well in giving us a lot to think about. This is a case going to take some consideration and we'll take under consideration and we'll be forthcoming with our decision. I want to thank you very much and have a good afternoon to you both.